IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JAMIE D. WEARY                                                                                        PLAINTIFF

versus                                                               CIVIL ACTION NO. 2:06cv188-KS-MTP

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security                                                          DEFENDANT

REPORT AND RECOMMENDATION

Plaintiff Jamie D. Weary brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act requesting judicial review of a final decision of the Commissioner denying her claim for disability benefits. The matter is now before the Court on the plaintiff's motion for summary judgment [6] and defendant's motion for an order affirming the decision of the Commissioner [7]. Having considered the pleadings, the transcript of the record and applicable law and being thus fully advised in the premises, the undersigned recommends that defendant's motion for an order affirming the decision of the Commissioner be denied, that plaintiff's motion for summary judgment be granted, and that plaintiff be awarded Title II and Title XVI benefits under the Social Security Act, as amended, from and after September 15, 2003.

MEDICAL/FACTUAL HISTORY

On September 15, 2003, plaintiff, then twenty-six years old and a full-time housekeeper at Marion General Hospital ("Marion General) became injured after lifting and pulling a full bag of linens. She was evaluated at the Marion General emergency room later that day and released

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for former Commissioner Jo Anne Barnhart as the defendant in this suit. *See* 42 U.S.C. § 405(g).

(Tr.[2] 164). Plaintiff continued to work for approximately six more weeks - until October 29, 2003 - when she claims the pain became so constant and severe that she could no longer endure working. On October 29, plaintiff was again treated at Marion General's emergency room. She described pain localized in her lower back and upon examination by Dr. Bryan McGraw, she was noted to have mild paralumbar spasms. Plaintiff was diagnosed with lower back pain and probable chronic strain (Tr. 161-62).

Dr. Kevin Holmes saw plaintiff on November 13, 2003. Based on an MRI of plaintiff's spine performed on October 30 showing disc degeneration, Dr. Holmes' assessment was an annular tear around L5-S1 with radicular back pain (Tr. 189). On December 4, 2003, plaintiff was seen by Dr. James Antinnes at the Hattiesburg Clinic. Plaintiff described lower back pain radiating into her legs (Tr. 166). Dr. Antinnes noted that plaintiff demonstrated severely limited range of motion of her back, secondary to pain, and that her posture was stooped (Tr. 167). Dr. Antinnes stated that plaintiff's x-rays were "essentially normal," and that her MRI scan showed "some mild disc degeneration at the L4-5 and L5-S1 levels without any obvious disc herniations or neural compromise" (Tr. 168). Dr. Antinnes recommended that plaintiff start aggressive physical therapy and recommended that she go back to work (Tr. 168).

Plaintiff was then referred by Dr. Holmes to Dr. Michael Molleston at the Hattiesburg Neurosurgery Clinic. After plaintiff's initial visit and consultation on December 16, 2003, Dr. Molleston recommended surgery and told plaintiff to stop physical therapy and not work until further notice (Tr. 204-05). Dr. Moses Jones at Jackson Neurosurgery and Spine Associates then examined plaintiff on January 8, 2004. Plaintiff reported no improvement in her symptoms

---

[2] All cites herein are to the transcript of the administrative record, duly certified and filed with this court under seal [4].

despite physical therapy (Tr. 169). Dr. Jones reviewed an MRI of plaintiff's lumbar spine and did not find any significant abnormalities (Tr. 171). He did note some minimal degenerative changes, but found no evidence of disc herniation (Tr. 171). Dr. Jones felt that plaintiff's "symptoms follow in no organic disease pattern and seem clearly out of proportion to any objective findings" (Tr. 171). Dr. Jones felt that there was no neurosurgical reason why plaintiff could not resume all normal activities (Tr. 171). He felt that surgery was unwarranted and that plaintiff should be treated with physical therapy and rehabilitation (Tr. 171).

    Plaintiff saw Dr. Molleston again on February 24, 2004, and after reviewing the MRI from October 2003, he recommended having a lumbar discogram to determine which discs were causing her problems (Tr. 203). He also expressed his opinion that Dr. Jones' report contained a number of inaccuracies and "represented a company's-doctor type medical report" (Tr. 203).

    Plaintiff was then seen by Dr. David McKeller on March 9, 2004. Dr. McKeller assessed plaintiff with lumbar disc displacement and performed a lumbar discogram (Tr. 179-81, 183). The discogram revealed "marked generation of disc material at L5-S1" and "severe spinal stenosis at L4-5 and L5-S1" (Tr. 182). Plaintiff also underwent a lumbar epidural steroidal injection (Tr. 184). Plaintiff testified at her hearing that the injections did not help the pain at all (Tr. 33). At Dr. McKeller's behest, plaintiff also underwent a CT scan of her lumbar spine. The results showed degeneration of disc material at L4-L5 and L5-S1 (Tr. 182).

    Plaintiff saw Dr. Molleston again on March 30, 2004. Based on his review of the recent CT scan, he stated that "it appear[ed] that the disc injury at L4-5 had worsened" (Tr. 202). Therefore, he recommended that they proceed with surgery (Tr. 202). On April 30, 2004, plaintiff underwent back surgery (laminectomy at L4-5 and L5-S1 with micro dissection, interbody fusion with rods and screws) (Tr. 193-97). After the surgery, plaintiff's discharge

3

summary indicated that her condition had improved and that by post-op day number one, she was able to stand and walk and by post-op day number two she was doing well with physical therapy (Tr. 193). However, plaintiff testified at the hearing that things did not get any better after the surgery (Tr. 25). Plaintiff also testified that the physical therapy she had after the surgery did not help her either (Tr. 15).

Upon follow-up in June 2004, plaintiff was noted by Dr. Molleston to be "doing somewhat better" and was no longer walking with a walker or using a wheelchair (Tr. 201). Plaintiff was released to drive a motor vehicle, but not to bend at the waist or perform any strenuous activity such as housework (Tr. 201). In August of 2004, Dr. Molleston saw plaintiff again and she reported experiencing some swelling and pain in her thighs (near her knees), which Dr. Molleston attributed to her lack of activity (Tr. 200). Dr. Molleston advised plaintiff that she could stop wearing her lumbar corset brace, and that she should start trying to walk ten minutes twice a day (Tr. 200).

On August 19, 2004, plaintiff was examined by an independent neurosurgeon, Dr. Victor Bazzone, in connection with her claim for worker's compensation benefits. Dr. Bazzone noted that plaintiff stated that she was 60% better than she had been before surgery, although she was still using a cane to walk and wore a brace to immobilize her lower back (Tr. 216). Dr. Bazzone observed that plaintiff had a waddling, broad-based gait typical of an extremely overweight individual (Tr. 217). Dr. Bazzone felt that plaintiff had reached maximum medical improvement from her surgery, and that although she still was complaining of pain, there were no "hard fast neurologic findings" to support that (Tr. 218). Dr. Bazzone stated that the best way to manage plaintiff's pain problems were weight reduction, exercise, anti-inflammatory

4

medication and epidural steroid injections (Tr. 218).  Dr. Bazzone opined that plaintiff's obesity[3] was one of the prime causes of her back pain and concluded: "Until such time as Ms. Weary reduces her body weight down to approximately 130 to 150 pounds, she has really no hope of losing her present symptoms" (Tr. 218).

Plaintiff applied for Disability Insurance benefits and Supplemental Security Income (SSI) benefits pursuant to Titles II and XVIII of the Social Security Act on December 16, 2004, claiming that she had been unable to work since September 15, 2003, due to her back injury  (Tr. 77-79, 80-82).  Her application was denied initially (Tr. 43-48) and again upon reconsideration. (Tr. 49-54).

In connection with plaintiff's request for consideration, an independent review of plaintiff's medical files was conducted on February 28, 2005 by Dr. Glenn James, a state agency physician and disability examiner, as well as by Angela Moore, a vocational examiner.  Ms. Moore found that plaintiff had the residual functional capacity for light work, in that she could stand and/or walk for six hours a day and could sit for six hours a day, as well as being able to lift a maximum of 20 pounds, and 10 pounds frequently (Tr. 129).  Dr. James also rated plaintiff as able to lift up to 20 pounds occasionally and 10 pounds frequently, and found that plaintiff could stand and/or walk, as well as sit, for six hours a day (Tr. 207).  There were no postural limitations established (Tr. 129, 208).  Upon follow-up with Dr. Molleston on May 17, 2005, Dr. Molleston stated "at this point I feel she is reaching maximum medical improvement" (Tr. 220).

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) (Tr. 61). In her request for a hearing, plaintiff stated that her condition had worsened since her last disability

---

[3] At that time, plaintiff was 5 feet 3 inches tall and weighed 240 pounds - which, according to Dr. Bazzone, put plaintiff within the category of "morbid obesity" (Tr. 216).

5

report, in that she could not bend because of severe pain and was experiencing weakness and numbness in her legs (Tr. 146). The hearing convened on August 17, 2005, before ALJ Charles Pearce (Tr. 18). Plaintiff, who was represented by counsel, appeared and testified (Tr. 21-35) as did Donald Woodall, a vocational expert (Tr. 35-36). At the hearing before ALJ Pearce on August 17, 2005, plaintiff testified that she is unable to stand, sit, lay down or walk for long periods of time without experiencing pain, and she cannot bend or pick anything up (Tr. 24-25). The pain is in her back as well as her legs, buttocks and arms (Tr. 25, 31). Plaintiff testified that she has had pain every day since September 15, 2003 and that, on average, it is an eight on a scale of one to ten (with ten being the most severe) (Tr. 31). Plaintiff testified that the pain medication she takes does not help her pain, and that it makes her drowsy (Tr. 25-26).[4] Plaintiff testified that she cannot perform any kind of housework and that she requires assistance from her grandmother (with whom she lives) and mother (who lives next door) to perform all her daily activities, such as providing her with meals and helping her bathe and comb her hair (Tr. 26-27; *see also* Tr. 150). Plaintiff estimated that she spends four or five hours a day in bed (Tr. 28). When not in bed, she sits in the recliner with her legs propped up (Tr. 29, 34). Plaintiff testified that she watches television when she can, but sometimes she is in too much pain and on those days, she just stays in bed all day (Tr. 27-28). Plaintiff estimated that she could stand for approximately 20 or 30 minutes, and could sit for about 30 minutes (Tr. 29). She estimated that the heaviest thing she could pick up is her purse (Tr. 29). Plaintiff testified that she stopped driving when she got hurt, and that in order to obtain groceries and other necessary items, she is transported by family members or friends to the store, approximately once a week (Tr. 26-27).

---

[4] At this time, plaintiff was taking Lexapro for stress/depression and Anaprox, Loratab and Soma for pain, all on a daily basis (Tr. 32-33, 149, 156).

6

She is able to go to church only once a month (Tr. 27).

Plaintiff testified that she has a limited education, having completed school only up until the eleventh grade (Tr. 21, 30, 93, 127).  She did not receive a GED (Tr. 30).  Prior to her injury, plaintiff had been employed as a housekeeper part-time at Marion General for approximately two and a half years (Tr. 22), and was promoted to a full-time employee two months before her injury (Tr. 216).  Plaintiff's job duties at Marion General included: changing bed lines; cleaning bathrooms, mirrors and windows; mopping and dusting; cleaning hospital offices; and carrying dirty laundry to the laundry room (Tr. 89, 106, 121).  She walked and stood all day (Tr. 89, 122).  She carried buckets of water when she mopped and lifted laundry baskets off of the rolling cart when she reached the laundry room, and frequently lifted 50 pounds of weight (Tr. 89, 122).  Plaintiff's previous jobs included a repacker at a retail store, an assembly line worker at a poultry plant, wire harness assembler, furniture wiper, and motor vehicle inspector.  (Tr. 23-24, 29-30, 88-89, 99-105, 121).  Plaintiff testified that she never had a job where she was able to sit down most of the day to perform her duties (Tr. 30).  At the hearing, Mr. Woodall classified plaintiff's job at Marion General as medium unskilled, and her previous jobs as sedentary unskilled, light unskilled, semi-skilled and skilled, and medium unskilled.  (Tr. 35-36).

On August 23, 2005, plaintiff had a follow-up visit with Dr. Molleston, who stated the following:  plaintiff had reached maximum medical improvement from the surgery; "with regards to the lumbar spine I thought that she was totally and permanently disabled for any substantial gainful activity"; plaintiff should lie down for an hour or two hours every day and that this was not compatible with working"; plaintiff cannot sit for over two hours in an 8 hour day without frequent breaks; plaintiff's restrictions would include no bending at the waist, no regular lifting; and she needed to ambulate with a cane (Tr. 231).

7

On September 29, 2005, the ALJ rendered his decision that the plaintiff was not disabled within the meaning of the Social Security Act (Tr. 10-17). Plaintiff sought Appeals Council review of the ALJ's decision (Tr. 222-23), and submitted Dr. Molleston's August 23 report in conjunction with her appeal.[5] The Appeals Council affirmed the ALJ's decision (Tr. 5-7), thereby rendering that decision the final decision of the Commissioner. Accordingly, the Commissioner's decision is now subject to review by this Court.[6] By this appeal, the plaintiff contends that the Commissioner's decision finding that plaintiff was not disabled was not supported by substantial evidence and should be reversed. The Commissioner contends that his decision is supported by substantial evidence and should be affirmed.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial the evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* at 164 (citations omitted). Conflicts in the evidence are for the Commissioner, not

---

[5] Plaintiff also submitted records showing that she visited the emergency room at Wesley Medical Center on October 10, 2005 complaining of lower back pain, and was told to rest, continue taking her pain medication and follow up with her doctor (Tr. 226-30).

[6] As required by 42 U.S.C. § 405(g), plaintiff instituted this action for review of the decision within sixty days after the Notice of Appeals Council Action**,** which was dated July 19, 2006.

the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988). If that decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617.

BURDEN OF PROOF

In *Harrell v. Bowen,* 862 F.2d 471 (5th Cir. 1988), the Fifth Circuit detailed the shifting burden of proof that applies to the disability determination:

An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled. In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f):

> 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
>
> 2. An individual who does not have a 'severe impairment' will not be found to be disabled.
>
> 3. An individual who meets or equals a listed impairment of the regulations will be considered disabled without consideration of vocational factors.
>
> 4. If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
>
> 5. If an individual's impairment precludes him from performing his past

9

>work, other factors including age, education, past work experience, and
>residual functional capacity must be considered to determine if other work
>can be performed.

*Harrell*, 862 F.2d at 475 (citations and footnotes omitted).   A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the...analysis." *Id.*  The claimant bears the burden of proof on the first four steps of the analysis, including inability to perform former work.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995) (citation omitted).

THE FIVE-STEP ANALYSIS IN THIS CASE

ALJ Pearce employed the five-step sequential evaluation process specified in 20 C.F.R. § 404.1520(b)-(f).  The ALJ found at the first step of the sequential analysis that plaintiff had not engaged in substantial gainful employment since October 30, 2003, the date plaintiff testified that she last worked full time (Tr. 14).  At the second and third steps, the ALJ found that plaintiff has lumbar disc disease and obesity, impairments that are "severe" within the meaning of the regulations,[7] but not severe enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 14).  At step four, the ALJ found that at all times during the relevant time period (except for several months post-surgery), plaintiff had the residual functional capacity[8] to perform light exertional level work,[9] and

---

[7] A medically determinable impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520 and 416.920.

[8] "Residual functional capacity" is defined in the Regulations as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. § 416.945.

[9] Light work requires the ability to lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  In addition, "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing...".  20 C.F.R. §§ 404.1567(b) and 416.967(b).  This means standing or walking, off and

that based on the vocational expert's testimony, plaintiff could return to her past relevant work as a repacker of a retail store, poultry dressing worker, and wire harness assembler as previously performed and as generally performed in the national economy (Tr. 15-16).  Consequently, the ALJ concluded that plaintiff had not been under a disability as defined in the SSA at any time through the date of his decision (Tr. 16).  Plaintiff argues that the ALJ's determinations at steps three and four of his analysis are not supported by substantial evidence.

## ANALYSIS

An individual can establish *per se* disability at step 3 of the sequential evaluation if she can show that her impairment(s) meets or equals in severity an impairment found at 20 C.F.R. Part 404, Subpart P, App. 1 (Listings).  *See* 20 C.F.R. §§ 404.1520(b)-(f); *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  Plaintiff has the burden of providing "medical findings that support each of the criteria" under the listing.  *Selders v. Sullivan,* 914 F.2d 614, 619 (5th Cir. 1990).  This is a heavy burden as the criteria are "demanding and stringent."  *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

The regulations also provide that in analyzing the severity of an impairment, all of an individual's symptoms - including pain - must be considered in this analysis.  20 C.F.R. §§ 404.1529, 416.929.  However, an individual's own statements about pain will not alone establish disability; there must be objective medical findings demonstrating an impairment "which could reasonably be expected to produce the pain..and which, when considered with all of the other evidence...would lead to a conclusion that [the individual is] disabled."  *Id.*; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1; Social Security Ruling 96-7p (Jul. 2, 1996).  It should be further noted that

---

on, for approximately six hours of an eight hour workday, with sitting occurring intermittently during the remaining time.  Social Security Ruling 83-10 (Nov. 30, 1982).

"[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled...As a trier of fact, the ALJ is similarly charged with the responsibility and discretion to determine just what weight to give to conflicting evidence presented at the hearing." *Wingo v. Bowen*, 830 F.2d 827, 830 (5th Cir. 1988) (citations omitted).

Plaintiff argues that she meets the impairment of obesity and therefore should be considered disabled without further consideration of other vocational factors and steps four and five in the five-step process. As defendant correctly points out, on August 24, 1999 the Commissioner published a final rule in the Federal Register deleting listing 9.09, Obesity, from the Listing of Impairments in 20 C.F.R., Subpart P, App. 1 (Listings). The final rule became effective on October 25, 1999. 64 F.R. 46122. Thus, plaintiff is incorrect that obesity, singly, is considered a listed impairment, as such listing no longer exists. However, obesity may be a factor in both "meets" and "equals" determinations if there is another impairment that, in combination with obesity, meets the requirements of a listing. *See* Social Security Ruling 02-1p; *see also* 64 F.R. 46122, 46124 (explaining that obese individuals may be found to have impairments that meet other listings or equal the severity of other listings, "considering the combined effect of obesity and the other impairments").

It is undisputed that plaintiff is obese. Thus, the question is whether plaintiff has another impairment that, in combination with her obesity, meets the requirements of another listing. As noted by the ALJ, plaintiff has been diagnosed with lumbar disc disease. The court agrees with defendant that such an impairment should be evaluated as an impairment of the "Musculoskeletal System," pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1. Under this section, "functional loss" in defined as "the inability to ambulate effectively on a sustained basis for any reason, including pain

associated with the underlying musculoskeletal impairment... ." *Id.* The section further defines "inability to ambulate effectively" as "an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id.* "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living," meaning "the ability to travel without companion assistance to and from a place of employment." *Id.* Examples of ineffective ambulation include the inability to walk without the use of two canes and the inability to perform "routine ambulatory activities, such as shopping...." *Id.* With respect to obesity, the regulations note:

> Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments... adjudicators must consider any additional and cumulative effects of obesity.

*Id.*

      Defendant argues that plaintiff has failed to show that her obesity contributed to the lumbar disc disease to the point of precluding effective ambulation. The court disagrees. Plaintiff walks with a cane (Tr. 204, 231). Plaintiff testified at the hearing that she is unable to stand or walk for long periods of time without experiencing pain (Tr. 24-25). She testified that she has had pain every day since September 15, 2003 and that, on average, it is an eight on a scale of one to ten (with ten being the most severe) (Tr. 31). Plaintiff testified that the pain medication she takes does not help her pain, and that it makes her drowsy (Tr. 25-26). Plaintiff testified that she cannot

perform any kind of housework and that she requires assistance from her grandmother (with whom she lives) and mother (who lives next door) to perform all her daily activities, such as providing her with meals and helping her bathe and comb her hair (Tr. 26-27).  Plaintiff estimated that she spends four or five hours a day in bed and when not in bed, she sits in the recliner with her legs propped up (Tr. 28-29, 34).  Plaintiff estimated that she could stand for approximately 20 or 30 minutes (Tr. 29).  Plaintiff testified that in order to obtain groceries and other necessary items, she is transported by family members or friends to the store, approximately once a week (Tr. 26-27).

Standing alone, plaintiff's testimony is insufficient.  However, many of these statements had some independent corroboration in the record.  Indeed, it is noted throughout plaintiff's medical records (both before and after her back surgery) that she has great difficulty standing up and walking and suffers from severe pain as a result of her back injury.  *See*, *e.g.*, Tr. 204 (noting that plaintiff "has a lot of difficulty rising from a sitting position.  She ambulates with a cane, and moves slowly and with some tremulousness"); Tr. 216-17 (observing that plaintiff used a cane, had a "waddling, broad-based gait typical of an extremely overweight individual" and after surgery, still had lower back radiating into the lower extremities)**;** Tr. 171 (stating that plaintiff "walks in a very stooped posture"); Tr. 172-73 (noting that plaintiff was in severe amount of pain and prognosis was "poor and guarded"); Tr. 174-76 (reporting that plaintiff was having intense pain in her lower extremities, worsened by prolonged movement, which limited her walking ability); Tr. 185 (noting that plaintiff "is not able to return to work secondary to the disc ruptures that is limiting her ability to walk and lift); Tr. 221 (noting, after surgery, that plaintiff "moves extremely slowly" and complains of "constant achy pain" and assigning her a whole body impairment rating of 20% based on her back injury); Tr. 200 (advising plaintiff, in post-surgery

14

follow-up, that she should start trying to walk ten minutes twice a day); Tr. 231 (stating that plaintiff walked with a cane and continued to have back pain radiating into her lower extremities after surgery, and opining that with regards to the lumbar spine I thought that she was totally and permanently disabled for any substantial gainful activity").[10]

The Commissioner even has acknowledged in his brief that Dr. Bazzone felt that plaintiff's obesity was one of the prime causes of her back pain. Indeed, Dr. Bazzone noted after the surgery that plaintiff was still having back pain radiating into her buttocks and lower extremities, and that "until such time as Ms. Weary reduces her body weight down to approximately one hundred and thirty (130) to one hundred and fifty (150) pounds, she has really no hope of losing her present symptoms" (Tr. 218).

ALJ Pearce explained in his decision that he felt that plaintiff's statements at the hearing that she did not get any relief from her pain medications and that they made her drowsy were not corroborated in the record and that plaintiff had not complained of these side effects to her doctors (Tr. 15). ALJ Pearce also stated in support of his decision that plaintiff had successfully undergone surgery which had markedly improved her pain (Tr. 16). However, there are numerous points in the record where it is noted that plaintiff continued to complain of severe back pain and

---

[10] This August 23, 2005 report from Dr. Molleston was not submitted to the ALJ, but was submitted to the Appeals Council and considered. The Fifth Circuit has held that evidence submitted only to the Appeals Council constitutes part of the record upon which the final decision is based and that a District Court is to consider and evaluate this evidence in reviewing the decision of the ALJ. *Higginbotham v. Barnhard*, 405 F.3d 332, 327-38 (5th Cir. 2005). Thus, the court will consider this report. However, Dr. Molleston's statement regarding plaintiff's disability is not a medical opinion within the meaning of the applicable regulations and therefore is not controlling on the issue of disability. "[S]ome opinions by physicians are not medical opinions, and as such have no 'special significance' in the ALJ's determination...Among the opinions by treating doctors that have no special significance are determinations that an applicant 'is disabled' or 'unable to work'...These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart,* 326 F.3d 618, 620 (5th Cir. 2003) (*citing* 20 C.F.R. §§ 404.1527(e) & (e)(3), 20 C.F.R. § 404.1527(e)(1)).

15

difficulty moving around, even after her back surgery, and despite taking pain medication. *See*, *e.g.*, Tr. 174 (noting that plaintiff's pain medications "do not seem to assist her pain"); Tr. 181 (noting "continued pain" and "unchanged" symptoms and therefore performing discogram); Tr. 184 (noting that plaintiff's "pain has been unamenable to more conservative treatment and therefore proceeding with epidural steroid injections); Tr. 216, 218, 219, 231 (noting that plaintiff was still complaining of severe back pain after surgery).

Based on the foregoing, the court finds that the Commissioner's finding that plaintiff's lumbar disc disease and obesity do not meet or equal a listed impairment lacks substantial evidence in the record. Accordingly, plaintiff having met her burden of establishing *per se* disability at step three, the court need not reach step four of the analysis. *See* 20 C.F.R. § 404.1520(b)-(f); *Harrell*, 862 F.2d at 475. Nevertheless, the court will proceed to analyze step four - because, even assuming that substantial evidence supported the Commissioner's finding at step three, for the reasons set forth below the court finds that the Commissioner's finding at step four lacks substantial evidence and therefore provides a separate, independent basis to overturn the Commissioner's decision.

Step 4

ALJ Pearce found that at all times during the relevant time period (except for several months post-surgery), plaintiff had the residual functional capacity to perform light exertional level work and that based on the vocational expert's testimony, plaintiff could return to her past relevant work as a repacker of a retail store, poultry dressing worker, and wire harness assembler as previously performed and as generally performed in the national economy (Tr. 15-16).

As noted earlier, the ability to perform "light work" requires that plaintiff be able to lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10

16

pounds, as well as a walking or standing for approximately six hours out of an eight-hour workday.  20 C.F.R. §§ 404.1567(b) and 416.967(b); Social Security Ruling 83-10.  "To be considered capable of performing a full wide range of light work, [plaintiff] must have the ability to do substantially all of these activities..."  20 C.F.R. §§ 404.1567(b) and 416.967(b).  Moreover, if a plaintiff's pain is severe and can be associated with an objective medical finding, the limitations imposed by that pain must be included in arriving at a residual functional capacity profile.  20 C.F.R. § 404.1529(c)(2); Social Security  Ruling 88-13.

      Plaintiff testified at the hearing that she is unable to stand, sit, lay down or walk for long periods of time without experiencing pain, and she cannot bend or pick anything up  (Tr. 24-25).  Plaintiff testified that she has had pain every day since September 15, 2003 and that, on average, it is an eight on a scale of one to ten (with ten being the most severe) (Tr. 31).  Plaintiff testified that the pain medication she takes does not alleviate her pain and that it makes her drowsy  (Tr. 25-26).  Plaintiff estimated that she could stand for approximately 20 or 30 minutes, could sit for about 30 minutes, and spends four or five hours a day in bed (Tr. 28-29).  She estimated that the heaviest thing she could pick up is her purse (Tr. 29).

      Standing alone, plaintiff's testimony is insufficient.  However, many of these statements have independent corroboration in the record.  Indeed, there is extensive evidence in the record demonstrating that plaintiff's pain was severe both before and after her back surgery and that she was significantly limited in her ability to walk, stand, lift or carry items.  *See*, *e.g.*, Tr. 204 (noting that plaintiff "has a lot of difficulty rising from a sitting position.  She ambulates with a cane, and moves slowly and with some tremulousness"); Tr. 219 (noting that plaintiff has trouble sitting for any length of time without having severe symptoms); Tr. 221 (stating that plaintiff "moves extremely slowly" and complains of "constant achy pain" and assigning her a whole body

17

impairment of 20% based on her back injury). Indeed, Dr. Molleston's most recent opinion - on August 23, 2005 - stated that plaintiff cannot sit or stand for over two hours in an eight hour day without frequent breaks, cannot bend at the waist, cannot lift from the floor to her waist, and cannot do any regular lifting (Tr. 231). Dr. Molleston also opined that he did not think plaintiff could perform even a sedentary or sit down job (Tr. 231).

      The only evidence in the record showing that plaintiff *could* perform light work is the February 28, 2005 independent examination by the state agency, which concluded that plaintiff had the RFC for light work, in that she could stand and/or walk for six hours a day and could sit for six hours a day, as well as being able to lift a maximum of 20 pounds occasionally, and 10 pounds frequently (Tr. 129, 207). This examination, which merely tracks the language of the applicable regulations, appears to have been performed without the benefit of a physical examination of plaintiff (and without any indication as to what medical records its conclusions were based on).

      As for ALJ Pearce's conclusion that plaintiff could perform her past relevant work - ALJ Pearce stated that he was "persuaded by the vocational evidence" - specifically, that "[t]he impartial vocational expert testified that based upon the claimant's age, education, past work, and light residual functional capacity, she could return to her past relevant work as a repacker of a retail store, poultry dressing worker, and wire harness assembler as previously performed and as generally performed in the national economy" (Tr. 16). However, a review of the hearing transcript reveals that Mr. Woodall did not, in fact, testify that plaintiff could return to her past relevant work; rather, he merely classified plaintiff's previous jobs as either sedentary, light or medium, and as either unskilled, semi-skilled or skilled (Tr. 35-36). Thus, the ALJ's stated reason for his conclusion that plaintiff could perform her past work could not have been the

18

reason. Defendant concedes this point, but argues that Mr. Woodall's "testimony did explain the scope of [plaintiff's] past work and provided support for the overall finding that plaintiff's RFC allowed for her to perform these occupations." The court disagrees. As discussed above, there is not substantial evidence in the record to support a finding that plaintiff could perform her past relevant work or any light work.

CONCLUSION/RECOMMENDATIONS

The Court finds that the Commissioner's decision that the plaintiff's impairments of obesity and lumbar disc disease were not severe enough to meet or medically equal, either singly or in combination, a listed impairment, is not supported by substantial evidence. The court also finds that the Commissioner's decision that plaintiff had the residual functional capacity to perform light exertional level work and could return to her past relevant work is not supported by substantial evidence. It is therefore the recommendation of this court that defendant's motion for an order affirming the decision of the Commissioner [7] be denied, that plaintiff's motion for summary judgment [6] be granted, and that plaintiff be awarded Title II and Title XVI benefits under the Social Security Act, as amended, from and after September 15, 2003.

In accordance with the rules, any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Automobile Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 15th day of August, 2007

s/ Michael T. Parker
United States Magistrate Judge
