IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JAMIE WEARY

VS.                                                            CIVIL ACTION NO. 2:06cv188-KS-MTP

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

ORDER REJECTING IN PART MAGISTRATE JUDGE'S
RECOMMENDATION AND DISMISSING CASE WITH PREJUDICE, ETC.

This cause is before the Court on Plaintiff's [6] Motion for Summary Judgment and Defendant's [7] Motion for an Order Affirming the Decision of the Commissioner, and the Court considering the same and also considering the Report and Recommendation filed August 15, 2007, by United States Magistrate Judge Michael T. Parker, does hereby find as follows, to-wit:

The medical/factual history of the Report and Recommendation of Magistrate Judge Parker is very thorough and complete, and the Court does hereby find that it should be adopted as the medical/factual history in this opinion and does hereby adopt same.

MEDICAL/FACTUAL HISTORY

On September 15, 2003, plaintiff, then twenty-six years old and a full-time housekeeper at Marion General Hospital ("Marion General") became injured after lifting and pulling a full bag of linens. She was evaluated at the Marion General emergency room later that day and released (Tr.[1] 164). Plaintiff continued to work for approximately six more weeks - until October 29, 2003 - when she claims the pain became so constant and severe that she could no longer endure

---

[1] All cites herein are to the transcript of the administrative record, duly certified and filed with this court under seal [4].

1

working. On October 29, plaintiff was again treated at Marion General's emergency room. She described pain localized in her lower back and upon examination by Dr. Bryan McGraw, she was noted to have mild paralumbar spasms. Plaintiff was diagnosed with lower back pain and probable chronic strain (Tr. 161-62).

Dr. Kevin Holmes saw plaintiff on November 13, 2003. Based on an MRI of plaintiff's spine performed on October 30 showing disc degeneration, Dr. Holmes' assessment was an annular tear around L5-S1 with radicular back pain (Tr. 189). On December 4, 2003, plaintiff was seen by Dr. James Antinnes at the Hattiesburg Clinic. Plaintiff described lower back pain radiating into her legs (Tr. 166). Dr. Antinnes noted that plaintiff demonstrated severely limited range of motion of her back, secondary to pain, and that her posture was stooped (Tr. 167). Dr. Antinnes stated that plaintiff's x-rays were "essentially normal," and that her MRI scan showed "some mild disc degeneration at the L4-5 and L5-S1 levels without any obvious disc herniations or neural compromise" (Tr. 168). Dr. Antinnes recommended that plaintiff start aggressive physical therapy and recommended that she go back to work (Tr. 168).

Plaintiff was then referred by Dr. Holmes to Dr. Michael Molleston at the Hattiesburg Neurosurgery Clinic. After plaintiff's initial visit and consultation on December 16, 2003, Dr. Molleston recommended surgery and told plaintiff to stop physical therapy and not work until further notice (Tr. 204-05). Dr. Moses Jones at Jackson Neurosurgery and Spine Associates then examined plaintiff on January 8, 2004. Plaintiff reported no improvement in her symptoms despite physical therapy (Tr. 169). Dr. Jones reviewed an MRI of plaintiff's lumbar spine and did not find any significant abnormalities (Tr. 171). He did note some minimal degenerative changes, but found no evidence of disc herniation (Tr. 171). Dr. Jones felt that plaintiff's

"symptoms follow in no organic disease pattern and seem clearly out of proportion to any objective findings" (Tr. 171). Dr. Jones felt that there was no neurosurgical reason why plaintiff could not resume all normal activities (Tr. 171). He felt that surgery was unwarranted and that plaintiff should be treated with physical therapy and rehabilitation (Tr. 171).

Plaintiff saw Dr. Molleston again on February 24, 2004, and after reviewing the MRI from October 2003, he recommended having a lumbar discogram to determine which discs were causing her problems (Tr. 203). He also expressed his opinion that Dr. Jones' report contained a number of inaccuracies and "represented a company's-doctor type medical report" (Tr. 203).

Plaintiff was then seen by Dr. David McKeller on March 9, 2004. Dr. McKeller assessed plaintiff with lumbar disc displacement and performed a lumbar discogram (Tr. 179-81, 183). The discogram revealed "marked generation of disc material at L5-S1" and "severe spinal stenosis at L4-5 and L5-S1" (Tr. 182). Plaintiff also underwent a lumbar epidural steroidal injection (Tr. 184). Plaintiff testified at her hearing that the injections did not help the pain at all (Tr. 33). At Dr. McKeller's behest, plaintiff also underwent a CT scan of her lumbar spine. The results showed degeneration of disc material at L4-L5 and L5-S1 (Tr. 182).

Plaintiff saw Dr. Molleston again on March 30, 2004. Based on his review of the recent CT scan, he stated that "it appear[ed] that the disc injury at L4-5 had worsened" (Tr. 202). Therefore, he recommended that they proceed with surgery (Tr. 202). On April 30, 2004, plaintiff underwent back surgery (laminectomy at L4-5 and L5-S1 with micro dissection, interbody fusion with rods and screws) (Tr. 193-97). After the surgery, plaintiff's discharge summary indicated that her condition had improved and that by post-op day number one, she was able to stand and walk and by post-op day number two she was doing well with physical therapy

(Tr. 193). However, plaintiff testified at the hearing that things did not get any better after the surgery (Tr. 25). Plaintiff also testified that the physical therapy she had after the surgery did not help her either (Tr. 15).

Upon follow-up in June 2004, plaintiff was noted by Dr. Molleston to be "doing somewhat better" and was no longer walking with a walker or using a wheelchair (Tr. 201). Plaintiff was released to drive a motor vehicle, but not to bend at the waist or perform any strenuous activity such as housework (Tr. 201). In August of 2004, Dr. Molleston saw plaintiff again and she reported experiencing some swelling and pain in her thighs (near her knees), which Dr. Molleston attributed to her lack of activity (Tr. 200). Dr. Molleston advised plaintiff that she could stop wearing her lumbar corset brace, and that she should start trying to walk ten minutes twice a day (Tr. 200).

On August 19, 2004, plaintiff was examined by an independent neurosurgeon, Dr. Victor Bazzone, in connection with her claim for worker's compensation benefits. Dr. Bazzone noted that plaintiff stated that she was 60% better than she had been before surgery, although she was still using a cane to walk and wore a brace to immobilize her lower back (Tr. 216). Dr. Bazzone observed that plaintiff had a waddling, broad-based gait typical of an extremely overweight individual (Tr. 217). Dr. Bazzone felt that plaintiff had reached maximum medical improvement from her surgery, and that although she still was complaining of pain, there were no "hard fast neurologic findings" to support that (Tr. 218). Dr. Bazzone stated that the best way to manage plaintiff's pain problems were weight reduction, exercise, anti-inflammatory

medication and epidural steroid injections (Tr. 218).  Dr. Bazzone opined that plaintiff's obesity[2] was one of the prime causes of her back pain and concluded: "Until such time as Ms. Weary reduces her body weight down to approximately 130 to 150 pounds, she has really no hope of losing her present symptoms" (Tr. 218).

Plaintiff applied for Disability Insurance benefits and Supplemental Security Income (SSI) benefits pursuant to Titles II and XVIII of the Social Security Act on December 16, 2004, claiming that she had been unable to work since September 15, 2003, due to her back injury  (Tr. 77-79, 80-82).  Her application was denied initially (Tr. 43-48) and again upon reconsideration. (Tr. 49-54).

In connection with plaintiff's request for reconsideration, an independent review of plaintiff's medical files was conducted on February 28, 2005 by Dr. Glenn James, a state agency physician and disability examiner, as well as by Angela Moore, a vocational examiner.  Ms. Moore found that plaintiff had the residual functional capacity for light work, in that she could stand and/or walk for six hours a day and could sit for six hours a day, as well as being able to lift a maximum of 20 pounds, and 10 pounds frequently (Tr. 129).  Dr. James also rated plaintiff as able to lift up to 20 pounds occasionally and 10 pounds frequently, and found that plaintiff could stand and/or walk, as well as sit, for six hours a day (Tr. 207).  There were no postural limitations established (Tr. 129, 208).  Upon follow-up with Dr. Molleston on May 17, 2005, Dr. Molleston stated "at this point I feel she is reaching maximum medical improvement" (Tr. 220).

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) (Tr. 61).  In

---

[2] At that time, plaintiff was 5 feet 3 inches tall and weighed 240 pounds - which, according to Dr. Bazzone, put plaintiff within the category of "morbid obesity" (Tr. 216).

her request for a hearing, plaintiff stated that her condition had worsened since her last disability report, in that she could not bend because of severe pain and was experiencing weakness and numbness in her legs (Tr. 146). The hearing convened on August 17, 2005, before ALJ Charles Pearce (Tr. 18).  Plaintiff, who was represented by counsel, appeared and testified (Tr. 21-35) as did Donald Woodall, a vocational expert (Tr. 35-36).  At the hearing before ALJ Pearce on August 17, 2005, plaintiff testified that she is unable to stand, sit, lay down or walk for long periods of time without experiencing pain, and she cannot bend or pick anything up  (Tr. 24-25). The pain is in her back as well as her legs, buttocks and arms (Tr. 25, 31).   Plaintiff testified that she has had pain every day since September 15, 2003 and that, on average, it is an eight on a scale of one to ten (with ten being the most severe) (Tr. 31).  Plaintiff testified that the pain medication she takes does not help her pain, and that it makes her drowsy  (Tr. 25-26).[3]  Plaintiff testified that she cannot perform any kind of housework and that she requires assistance from her grandmother (with whom she lives) and mother (who lives next door) to perform all her daily activities, such as providing her with meals and helping her bathe and comb her hair (Tr. 26-27; *see also* Tr. 150).  Plaintiff estimated that she spends four or five hours a day in bed (Tr. 28). When not in bed, she sits in the recliner with her legs propped up (Tr. 29, 34).  Plaintiff testified that she watches television when she can, but sometimes she is in too much pain and on those days, she just stays in bed all day (Tr. 27-28).  Plaintiff estimated that she could stand for approximately 20 or 30 minutes, and could sit for about 30 minutes (Tr. 29).  She estimated that the heaviest thing she could pick up is her purse (Tr. 29).  Plaintiff testified that she stopped

---

[3] At this time, plaintiff was taking Lexapro for stress/depression and Anaprox, Loratab and Soma for pain, all on a daily basis (Tr. 32-33, 149, 156).

driving when she got hurt, and that in order to obtain groceries and other necessary items, she is transported by family members or friends to the store, approximately once a week (Tr. 26-27). She is able to go to church only once a month (Tr. 27).

Plaintiff testified that she has a limited education, having completed school only up until the eleventh grade (Tr. 21, 30, 93, 127). She did not receive a GED (Tr. 30). Prior to her injury, plaintiff had been employed as a housekeeper part-time at Marion General for approximately two and a half years (Tr. 22), and was promoted to a full-time employee two months before her injury (Tr. 216). Plaintiff's job duties at Marion General included: changing bed lines; cleaning bathrooms, mirrors and windows; mopping and dusting; cleaning hospital offices; and carrying dirty laundry to the laundry room (Tr. 89, 106, 121). She walked and stood all day (Tr. 89, 122). She carried buckets of water when she mopped and lifted laundry baskets off of the rolling cart when she reached the laundry room, and frequently lifted 50 pounds of weight (Tr. 89, 122). Plaintiff's previous jobs included a repacker at a retail store, an assembly line worker at a poultry plant, wire harness assembler, furniture wiper, and motor vehicle inspector. (Tr. 23-24, 29-30, 88-89, 99-105, 121). Plaintiff testified that she never had a job where she was able to sit down most of the day to perform her duties (Tr. 30). At the hearing, Mr. Woodall classified plaintiff's job at Marion General as medium unskilled, and her previous jobs as sedentary unskilled, light unskilled, semi-skilled and skilled, and medium unskilled. (Tr. 35-36).

On August 23, 2005, plaintiff had a follow-up visit with Dr. Molleston, who stated the following: plaintiff had reached maximum medical improvement from the surgery; "with regards to the lumbar spine I thought that she was totally and permanently disabled for any substantial gainful activity"; plaintiff should lie down for an hour or two hours every day and that this was

not compatible with working"; plaintiff cannot sit for over two hours in an 8 hour day without frequent breaks; plaintiff's restrictions would include no bending at the waist, no regular lifting; and she needed to ambulate with a cane (Tr. 231).

On September 29, 2005, the ALJ rendered his decision that the plaintiff was not disabled within the meaning of the Social Security Act (Tr. 10-17). Plaintiff sought Appeals Council review of the ALJ's decision (Tr. 222-23), and submitted Dr. Molleston's August 23 report in conjunction with her appeal.[4] The Appeals Council affirmed the ALJ's decision (Tr. 5-7), thereby rendering that decision the final decision of the Commissioner. Accordingly, the Commissioner's decision is now subject to review by this Court.[5] By this appeal, the plaintiff contends that the Commissioner's decision finding that plaintiff was not disabled was not supported by substantial evidence and should be reversed. The Commissioner contends that his decision is supported by substantial evidence and should be affirmed.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Boeing*, 837 F 2d 1378, 1382 (5th Cir. 1988), *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) 42 U.S.C. § 405(g), *Falco v. Shalala*, 27 F. 3d 160, 163 (5th Cir. 1994). Substantial evidence is "more than a

---

[4] Plaintiff also submitted records showing that she visited the emergency room at Wesley Medical Center on October 10, 2005 complaining of lower back pain, and was told to rest, continue taking her pain medication and follow up with her doctor (Tr. 226-30).

[5] As required by 42 U.S.C. § 405(g), plaintiff instituted this action for review of the decision within sixty days after the Notice of Appeals Council Action, which was dated July 19, 2006.

scintilla, less than a preponderance and as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F. 2d 162, 164 (5th Cir. 1983). To be substantial the evidence must "do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or 'no contrary medical evidence.'" Id. at 164 (citations omitted). Conflicts in the evidence are for the Commissioner, not the Courts, to resolve. *Selders v. Sullivan*, 914 F. 2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo* or substitute its judgment for the commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harold v. Boeing*, 862 F. 2d 471, 472 (5th Cir. 1988). If that decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders*, 914 F. 2d at 617.

## BURDEN OF PROOF

In *Harrell v. Bowen,* 862 F.2d 471 (5th Cir. 1988), the Fifth Circuit detailed the shifting burden of proof that applies to the disability determination:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled. In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f):
>
> 1. An individual who is working and engaging in substantial gainful

>activity will not be found disabled regardless of the medical findings.
>
>2. An individual who does not have a 'severe impairment' will not be found to be disabled.
>
>3. An individual who meets or equals a listed impairment of the regulations will be considered disabled without consideration of vocational factors.
>
>4. If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
>
>5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Harrell*, 862 F.2d at 475 (citations and footnotes omitted). A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the...analysis." *Id.* The claimant bears the burden of proof on the first four steps of the analysis, including inability to perform former work. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995) (citation omitted).

The Report and Recommendation of the Magistrate Judge correctly states the burden of proof and the five step sequential procedure set forth in 20 C.F.R. § 404 1520(b) through (f). There is no objection to the Magistrate's statement of the burden of proof and this Court adopts the burden of proof portion of the Magistrate Judge's Report and Recommendation as stated on pages 9 and 10 of the report.

### FIVE STEP ANALYSIS IN THIS CASE

In the first step of the sequential analysis, the Administrative Law Judge found that the Plaintiff had not engaged in substantial gainful employment since October 30, 2003, the date

Plaintiff testified that she last worked full time (Tr. 14). At the second and third steps, the Administrative Law Judge found that Plaintiff has lumbar disk disease and obesity, impairments that are "severe" within the meaning of the regulations, but not severe enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 14). At Step 4, the Administrative Law Judge found that at all times during the relevant time period (except for several months post surgery), Plaintiff had the residual functional capacity to perform light exertional level work, and that based on the vocational experts' testimony, Plaintiff could return to her past relevant work as a repacker of a retail store, poultry dressing worker, and wire harness assembler, as previously performed and as generally performed in the national economy. As a result of this finding, the Administrative Law Judge concluded that the Plaintiff had not been under a disability as defined by the Social Security Act at any time through the date of the decision (Tr. 16). The Plaintiff argues that the Administrative Law Judge's determinations at Steps 3 and 4 of this analysis are not supported by substantial evidence.

## ANALYSIS

To say that the evidence in this case is conflicting is an understatement. The Plaintiff is a young woman who has a background of varied low to medium skill jobs requiring different levels of physical exertion. Plaintiff's testimony was extensive involving her pain and physical limitations. Her testimony was that she was able to do very little and spent a great deal of her time in bed or in a recliner.

However, Claimant's statements about her own pain are insufficient to establish a disability. There must be objective medical findings demonstrating an impairment "which could

reasonably be expected to produce the pain..and which, when considered with all of the other evidence...would lead to a conclusion that [the individual is] disabled." 20 C.F.R. §§ 404.1529, 416.929.   The Administrative Law Judge is the trier of fact and determines the weight and credibility to be given to each of the witnesses who testify. The parties agree that the Plaintiff is obese. Obesity is not a listed impairment, but may, in combination with another impairment, meet the threshold of disability. The Administrative Law Judge found that the Plaintiff did not meet the requirements of a listed impairment, but the Magistrate Judge agreed with the Commissioner that the lumbar disk disease, coupled with obesity, should be evaluated as a impairment of the "musculoskeletal system" pursuant to 20 C.F.R. Part 404, Sub-part P, App. 1.  Under this Section, "functional loss" is defined as "the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment...." Id. The section further defines "inability to ambulate effectively as "an extreme limitation of the ability to walk; i.e. an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Id. The Commissioner argues that the obesity, coupled with the lumbar disk disease, does not prevent effective ambulation. The Magistrate Judge disagreed with the Commissioner's argument and found that the pain level of Plaintiff, when coupled with the lumbar disk disease and obesity, prevented her from ambulating.

      The medical evidence that is before the Court belies the inability to ambulate claim of Plaintiff. Doctor Molleston suggested activity and that Plaintiff should walk twice a day (Tr. 200). Doctor Victor Bazzone stated that she had reached maximum medical improvement from her surgery, but there were no "hard, fast, neurologic findings" to support the level of pain of which Plaintiff was complaining. Dr. Bazzone recommended weight reduction, exercise and anti-

inflammatory medication and steroid injections. He also recommended losing significant weight. Dr. Glenn James, a state agency physical and disability examiner and Angela Moore a vocational examiner, testified that Plaintiff had residual functional capacity for light work and stated her limitations. Dr. Molleston stated, "at this point I feel she has reached maximum, medical improvement" (Tr. 220).  However, Dr. Molleston is the doctor who recommended that she walk and lose weight. Dr. Bazzone also stated that Plaintiff was able to walk effectively.  Plaintiff testified that she had a sixty percent improvement in her symptoms after the surgery (Tr. 216).

When all of the testimony is considered, this Court declines to accept the Magistrate's recommendation that Plaintiff met the definition for disability under a listed impairment under Step 3 of the five step process.

## STEP FOUR ANALYSIS

The Administrative Law Judge found that Plaintiff possessed residual functional capacity to perform light exertional level work and, that based on the vocational expert's testimony, Plaintiff could return to her past relevant work as a repacker of a retail store, poultry dressing worker, and wire harness assembler, as previously performed and as generally performed in the national economy (Tr. 14-15).  Apparently, the Administrative Law Judge discounted Plaintiff's testimony as to the level of her pain and as to the level of her disability.  The testimony of the medical experts contradicted the testimony of Plaintiff as to her limitations.  This Court notes that the Plaintiff's claim is largely subjective in that it is primarily based on extreme pain. This Court is mindful of the fact that Plaintiff has sustained a significant back injury and has had corrective surgery, which obviously would have associated pain.  However, the Administrative Law Judge found that Plaintiff did not meet the definition of disability at Step 4.  Substantial evidence is

clearly before the Court establishing the finding of the Administrative Law Judge. This Court's job is not to reweigh the evidence or insert its opinion for that of the Administrative Law Judge, but if there is substantial evidence supporting the finding of the Administrative Law Judge, this Court is required to affirm same.

The Administrative Law Judge had the benefit of viewing the testimony of Plaintiff and of comparing her testimony to the experts. His finding was supported by substantial evidence. While the vocational expert did not actually specify that Plaintiff could return to her past relevant work, his testimony did support the overall finding that Plaintiff's residual functional capacity allowed her to perform her previous occupations.

## CONCLUSION

This Court cannot state that the Commissioner's findings are not supported by substantial evidence. There is certainly no conspicuous absence of credible evidence supporting the Commissioner's finding. This Court may not reweigh the evidence or substitute its judgment for that of the Commissioner's. The Commissioner's decision is supported by substantial evidence and it must be affirmed. IT IS, THEREFORE, ORDERED that the Report and Recommendation of the Magistrate Judge is rejected. It is the finding of this Court that the Plaintiff has not met her burden of proof in establishing her disability and Motion for An Order Affirming the Decision of the Commissioner [7] is **granted** and the claim of Plaintiff is **dismissed**.

SO ORDERED this, the 8th day of November, 2007.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE